**THIELS v. YOUNGER MOTOR TRUCK CO., Inc., et al.**

No. 5465.

Court of Appeal of Louisiana. Second Circuit.

Oct. 29, 1937.

Rehearing Denied Dec. 3, 1937.

Writ of Certiorari and Review Denied Jan. 10, 1938.

K. Hundley, H. B. Gist, W. C. Roberts, and Hawthorn, Stafford & Pitts, all of Alexandria, for appellants.

B. F. Thompson, Jr., of Alexandria, for appellee.

DREW, Judge.

The opinion of the lower court correctly sets out plaintiff's case and the defense urged, and accurately found the facts. It is as follows:

"This suit is brought by plaintiff to recover compensation under the Workmen's Compensation Law, Act No. 20 of 1914, as amended, in the sum of $19.50 per week for 100 weeks, plus $226.00 for medical, hospitalization and doctor's bills, resulting from alleged personal injuries sustained on December 27, 1935, arising out of and in the course of his employment by the defendant, Younger Motor Truck Company, Incorporated, as a truck driver, while hauling large concrete culverts from the place of business of the Central Culvert Company, Incorporated, located in the city of Alexandria, to various points within the state, for use in connection with various road projects.

"Plaintiff alleges that he was receiving for his services 70 cents per load and 1¼ cents per mile for each mile traveled in going and returning on each trip made; that he began work on or about December 17, 1935, working six days per week during his period of employment, which averaged $5.00 per day; that he was employed and paid by said Younger Motor Truck Company, Incorporated, and that he drove a large International truck owned by said company.

"He alleges that at about 6:30 P. M. on the 27th day of said month of December, while driving said truck in hauling a load of culverts for delivering between Ferriday and Sicily Island, his said truck was run into on the highway between Jena and Jonesville by an automobile driven by one Dr. E. H. Linnfield, resulting in the loss of his right eye, caused by particles of broken glass, and receiving other minor bodily injuries, occasioning the claims sued upon.

"In the alternative, plaintiff pleads that in the event Younger Motor Truck, Incorporated, should not be held liable, then the Central Culvert Company, Incorporated, for which the culverts were being hauled, should be held.

"Younger Motor Truck Company, Incorporated, filed an answer of general denial and called in warranty the Great American Indemnity Company to defend the suit by reason of an indemnity insurance policy which it held with said Indemnity Company upon its employees. Said Younger Truck Company, Incorporated, for the sake of brevity, will hereinafter be referred to as Younger Company, and alleges that the truck in question was being demonstrated at the time of the accident, in connection with the truck sales business being carried on by said Younger Company; that it was attempting to sell the truck to F. J. Whitehurst, who was engaged in delivering culverts with his own trucks for the Central Culvert Company and was in the market for the purchase of an additional truck; that the truck was accordingly turned over to Whitehurst under an agreement by which the amount which the truck earned during the period of demonstration was to be credited on its purchase price, in event of purchase, after deducting for expenses for gasoline, oil, the driver, etc.; that the truck, however, was not purchased on account of the fact that it was damaged in the collision in question.

"The Central Culvert Company, Incorporated, filed a general denial of liability, and specially denying that plaintiff was in its employment at the time of the alleged accident and injuries.

"The Great American Indemnity Company, under its call in warranty, denied liability under the terms of its policy issued to the Younger Company, for the reason

that (quoting) 'the truck which the plaintiff, Thiels, was driving was being used by the Younger Motor Truck Company, Inc., for the specific purpose of hauling concrete culverts under contract with the Central Culvert Company, Inc.; that the work which was being done at the time with this truck was contract hauling, pure and simple, and had nothing whatsoever to do with a demonstration of the said truck to a prospective purchaser, as contended by defendant herein.'

"It is further averred by said Indemnity Company that the policy issued by it to said Younger Company was issued to insure the latter's employees against accidents arising out of or in connection with its business of 'an automobile sales and service agency', as will be shown by the terms of the policy itself; that 'on this particular occasion the Younger Motor Truck Company, Inc., had departed completely from the automobile sales and service business and had contracted * * * for a money consideration, to haul a number of concrete culverts from the plant of said Culvert Company to a point near Ferriday, Louisiana', which was a trucking and hauling business not in any manner connected with its sales and service agency, and that it involved a risk or hazard not covered under the policy.

"In the policy, which was introduced in evidence, the paragraph which it is conceded is pertinent to this case, the name of the assured is classified as follows:

" 'Classification of Operations

1. (a) Automobile Sales and Service Agencies;
    Automobile Salesmen (8748) Rate .58
    All other employees, including accessory or spare part salesmen; chauffeurs and other helpers, (8391) Rate 2.13'

"The testimony discloses substantially the following pertinent facts:

"The Younger Motor Truck Company, Incorporated, had on hand a large repossessed (second hand) 3-ton International truck, which it desired to re-sell, having previously sold it new to a logger who, after using it in his logging business for several months and being unable to finish paying for it, surrendered it back to the Company. The truck, due to the usually rough and heavy hauling of logs to which it had been subjected, required to be tried out, and Mr. Whitehurst wanted to try it out thoroughly, and Mr. Younger, president of the Younger Motor Company, was agreeable to its being thoroughly tested. It was therefore agreed by and between these two gentlemen that Mr. Whitehurst should take the truck and use it in a trial test in the manner outlined above, as alleged in Younger Motor Company's answer. The truck was accordingly taken over by Mr. Whitehurst who began using it on December 18, 1935, in his contract hauling of concrete culvert for the Concrete Culvert Company. Mr. Thiels, plaintiff, served as driver under his employment by Younger Motor Company, and was paid for his services by said Company.

"Mr. Whitehurst kept daily check on the truck's performance up to the last day before the accident on December 27th. It appears that the truck was requiring too much gasoline to the mileage it was making, which was reported by Mr. Whitehurst to Mr. Younger, and the latter had that defect adjusted one or more times. On about two days prior to the day of the accident, Mr. Whitehurst reported some carburetor trouble and that was adjusted, after which Mr. Whitehurst, feeling satisfied, announced that he would purchase the truck on Saturday following. However, the accident occurred the night before, and resulted in Mr. Whitehurst's failure to consummate the deal. He states that he would have made the purchase had it not been that the truck was considerably damaged in the collision.

"Considering the testimony bearing upon this point, the court is of the opinion that a bona fide test or demonstration was being made of the truck throughout the ten days, less one or two days that intervened on Sunday and Christmas day.

"The most serious question in this case, the one on which must rest Younger Motor Company's right to hold the Indemnity Company liable, is whether or not such use and trial to which the truck was being put can be considered a demonstration such as is contemplated under the terms of the policy of indemnity. The court seriously doubts that it can be so considered. While it may be taken for granted that as between Mr. Younger and Mr. Whitehurst, in fact is taken for granted, the truck was being used for the purpose of a demonstration of its serviceability for the use for which Mr. Whitehurst wished to purchase it, yet in doing so it was actually and in fact being used in contract hauling over long distances for hire, making from one to two trips daily to points varying from 30 to 160 miles distant

from Alexandria, and return, requiring at times driving after nightfall. On the occasion of the collision it was being driven after dark, requiring the use of headlights.

"The driver, Thiels, not only had to drive the truck under his employment, but was required to and did unload heavy concrete culverts weighing hundreds of pounds. This was a part of his duties which he performed on every trip he made. His duties and the work which he was required to perform, and which he did perform up to the moment of receiving his injuries, at the very least which can possibly be said of them, were those of a truck driver. So far as he was concerned, he was employed as a truck driver. The business in which he was engaged was that of a truck driver. It is shown that the occupation of a truck driver carries a much higher rate under the policy than that of chauffeurs and other employees classified as coming under the policy. Truck drivers, as such under the policy, carry about double the rate that the latter carry, I believe the testimony shows. The court feels that it is forced to the conclusion that the policy does not cover the employment in which plaintiff was engaged at the time of his accident and injuries. The Indemnity Company therefore will not be held under the policy and it will be relieved under its·call in warranty. It having been shown that plaintiff was not under the employment of the Central Culvert Company, Incorporated, the demands against it will also be rejected.

"The testimony shows conclusively that plaintiff was in the employment of the defendant, Younger Motor Truck Company, Incorporated, as he alleges in his main demand. However, his wages show to have averaged only $4.41 per day, based upon six days per week, making his weekly wages amount to $26.46, 65% of which would aggregate $17.20 per week. He is entitled to compensation during a period of 100 weeks. His expenses for medical and hospitalization amount to $————.

"There will therefore be judgment in favor of the plaintiff and against the defendant, Younger Motor Truck Company, Incorporated, for compensation in the sum of $17.20 per week during the period of 100 weeks, beginning December 27, 1935, with legal interest on each weekly installment from their respective dates of maturity until paid; and judgment in the further sum. of $209.15 for hospital, medical and surgical expenses incurred, with legal interest from

judicial demand until paid; and·for all costs of this suit, including fees of medical experts, which are fixed at $25.00 each.

"R. C. Culpepper
"Judge."

■ Appellants in their brief have the following to say:

"In the beginning, we will state that there is no controversy as to the question of liability of the Younger Company to the plaintiff, Thiels, and there is no dispute as to the amount of compensation and medical expenses which the said plaintiff was entitled to under the Compensation Law.

"We will state further that we think all parties are in agreement that the said plaintiff Thiels was injured; that he was in the course of his employment and his accidental injury arose out of his employment with the Younger Company, and that the only or principal issue involved in this appeal is the question of whether or not the insurance company is liable to the Younger Company, under the terms and provisions of the compensation insurance policy which it sold and delivered·to the Younger Company, which was in effect on the date of this accident."

It is therefore apparent, and as was admitted in argument here, that plaintiff is entitled to recover from his employer under the Compensation Law of this state.

■ The only question before us for determination is the liability of the insurer. ·Counsel for appellant, which is the insured, contends that at the time of the accident the truck was being used for demonstration purposes, and therefore the insurer is liable. Unless we can find this fact to be true, appellant's contention must fail. There is no serious dispute over the findings of fact by the lower court and the record amply bears out its findings. In its written opinion, the lower court said:

"The truck was accordingly taken over by Mr. Whitehurst who began using it on December 18, 1935, in his contract hauling of concrete culvert for the Concrete Culvert Company. Mr. Thiels, plaintiff, served as driver under his employment by Younger Motor Company and was paid for his services by said Company.

"Mr. Whitehurst kept daily check on the truck's performance up to the last day before the accident on December 27th. It appears that the truck was requiring too much gasoline to the mileage it was making, which was reported by Mr. Whitehurst to

Mr. Younger, and the latter had that defect adjusted one or more times. On about two days prior to. the day of the accident, Mr. Whitehurst reported some carburetor trouble and that was adjusted, after which Mr. Whitehurst, feeling satisfied, announced that he would purchase the truck on Saturday following. However, the accident occurred the night before, which resulted in Mr. Whitehurst's failure to consummate the deal. He states that he would have made the purchase had it not been that the truck was considerably damaged in the collision."

Hence, if it be conceded that the truck was. in use for demonstration purposes at the beginning, and therefore was within the provisions of the insured's policy, the need for further demonstration ended when Mr. Whitehurst accepted the truck as satisfactory on the day of and before the accident and agreed to close the deal to purchase it on the next day. At the very moment he accepted the truck as being satisfactory, the period of demonstration ended, if it could be held to be demonstration up to that time; and the only reason for it to be continued in further use in hauling culverts was in order to carry out the contract of hauling which had been entered into by the insured.

We fully agree with the judgment of the lower court, and it is affirmed, with costs. ,