(83 South. 260)

No. 23335.

WILEY v. STEWART.

(May 5, 1919. On Rehearing, Nov. 3, 1919.)

*(Syllabus by Editorial Staff.)*

1. JUDGMENT ⊚⇒735—DECISION INVOLVING VALIDITY OF WILL NOT RES JUDICATA ON VALIDITY OF TESTATOR'S MARRIAGE.

A decision involving the validity of a will is not res judicata on issue whether a purported second marriage by the testator was legal, where the marriage was not in issue and not considered.

2. ESTOPPEL ⊚⇒3(2)—BY PLEADING; VALIDITY OF MARRIAGE.

A petition attacking the will of plaintiff's father, and describing a woman as the "testator's surviving widow and executrix," does not estop plaintiff from later suing to recover property of testator from a son of the alleged widow, upon the ground that her purported marriage to testator was illegal.

On Rehearing.

3. MARRIAGE ⊚⇒54—BY WOMAN WITH LIVING HUSBAND AS GOOD-FAITH MARRIAGE.

A woman's attempted second marriage while she knew her first husband was living is not a good-faith marriage, within Civ. Code, art. 118, providing that such marriages shall have civil effect.

4. MARRIAGE ⊚⇒37—SLAVE MARRIAGE, WITH COHABITATION AFTER EMANCIPATION, BECOMES LEGAL.

Where a negress was married while a slave, but continued to live with her husband after emancipation, the marriage became legal.

Appeal from Fourteenth Judicial District Court, Parish of Avoyelles; S. Allen Bordelon, Judge.

Action by George Wiley against George Stewart. Judgment for defendant, and plaintiff appeals. Judgment set aside, and judgment ordered for plaintiff.

J. C. Cappel, of Covington, for appellant.
G. H. Couvillon, of Marksville, for appellee.

SOMMERVILLE, J. Edmund Wiley and Rose Wiley contracted a slave marriage, which was continued after the Civil War, and which has been declared to have been a legal marriage. Wiley v. Bowman, 144 La. 181, 80 South. 243. There was one son, George, issue of that marriage, who was recognized as the forced heir of Edmund Wiley in the above-entitled suit; Edmund and Rose separated after the war, and Rose died in 1876 or 1877. Subsequently Edmund acquired the property which is in controversy in this suit.

Sandy Alexander Stuart and Eliza Bowman also contracted a slave marriage, but it is not certain whether or not they continued marital relations after they were emancipated. There were several children of the marriage, of whom George Stewart is one. He is the defendant in this cause. The validity of that marriage is attacked by plaintiff; but the decision of that matter is not necessary to be decided in disposing of this case, and plaintiff is without interest therein. Sandy and Eliza separated. Sandy "took up with another woman;" and Eliza says she married Edmund Wiley. This last alleged marriage took place while Sandy, the husband of Eliza, and Rose, the wife of Edmund, were both living. Edmund thus had two

wives, and Eliza had two husbands, at the same time.

Edmund Wiley acquired the property involved while he and Eliza were living as husband and wife.

Edmund Wiley died on January 14, 1916. He left a last will, in which he bequeathed "unto his wife, Eliza Bowman, the usufruct of all the property of which he may die possessed, * * * for her to enjoy during her natural life, and after her death his property to revert to his heirs and legal representatives. And he also appointed his wife, Eliza Bowman, executrix without giving bond." The validity of his will was attacked by George Wiley, and it was declared null. Wiley v. Bowman, 144 La. 181, 80 South. 243.

During the pendency of this last referred to suit Eliza died, on December 15, 1917, and her son George was made a party to the proceeding.

Eliza left a last will, in which "she gives and bequeaths unto her son George Stewart, all the property of which she may die possessed." And she also appoints "her said son, George Stewart, her testamentary executor."

George Stewart was recognized as heir at law and confirmed as universal legatee and executor of the estate of the deceased.

The will of Eliza Bowman is attacked as being invalid by plaintiff; but he is without interest therein or thereunder, and in our view of this case it is not necessary to pass upon the validity of that will.

There was inventoried in the succession of Eliza Bowman the property which had been owned by Edmund Wiley.

George Wiley, the son and heir of Edmund Wiley, and the administrator of the latter's succession, has now sued George Stewart for possession of the property which has been inventoried in the succession of Eliza Bowman, and of which he has taken possession, and he asks that George Stewart be con-demned to deliver to him, George Wiley, heir and administrator, all the property belonging to the succession of Edmund Wiley.

There was judgment in favor of defendant, dismissing the suit of plaintiff, and he has appealed.

[1] Defendant filed several exceptions which were overruled; but the ruling will not be considered, as it is unnecessary for a proper disposition of this case. Defendant filed pleas of estoppel and res judicata, which were properly overruled. The former case of Wiley v. Bowman did not present the validity of the marriage of Edmund Wiley and Eliza Bowman for determination, and it was not considered. The validity of the will of Edmund Wiley was the only point presented in plaintiff's petition in the former case. In her answer, Eliza Bowman set up that George Wiley was not the son of and heir of Edmund Wiley, and that issue became a necessary one.

[2] In his petition attacking the will of his father, George Wiley prayed "that Eliza Bowman, surviving widow and executrix of the succession of Edmund Wiley, be duly cited," etc. But that allegation did not mislead Eliza Bowman, the defendant in the case, or George Stewart, defendant in the this case, and it was not in any way prejudicial to them or their interests. It cannot estop plaintiff in this case from alleging and proving that Edmund Wiley and Eliza Bowman were not married.

The only evidence as to the marriage, of Edmund Wiley and Eliza Bowman is the testimony of Eliza and that of neighbors, who said that they were considered husband and wife in the community in which they lived.

There was also offered a certificate of the clerk of court, certifying that Edmund Wiley had received a license, dated September 22, 1866, to marry Eliza Stagg. Another certifi-

cate by the clerk says the marriage records of the parish of St. Landry fail to disclose that a license was issued in 1866 and 1867 to Edmund Wiley and Eliza Bowman. It does not appear who Eliza Stagg was, or that she was Eliza Bowman, and the marriage certificate in the record shows that Edmund Wiley was married to Eliza Staywood on September 26, 1866. This certificate is signed by Eliza Staywood, by affixing her mark, and not by Eliza Bowman. The latter was a witness in the former case, and she gave no explanation of these documents. They were not in evidence in that case, and her status as a married woman was not an issue therein.

But the record shows that Edmund Wiley had been married to Rose Wiley, and they were husband and wife in 1866 and 1867, when it is claimed that he was married to Eliza Bowman, and Eliza knew at the time that he was married. Rose and her son lived in the house for a while with Edmund and Eliza, and the latter reared the son of Edmund and Rose. Rose died in 1876 or 1877.

Edmund Wiley was incapable of contracting a marriage with Eliza during the existence of his marriage with Rose. And if Sandy Alexander Stuart and Eliza Bowman were legally married, upon which question no opinion is expressed, Eliza was incapable of contracting another marriage during the existence of that marriage.

Eliza did not, therefore, marry Edmund in good faith. She knew of his marriage with Rose at the time, and no civil effects flow from such union. There were no children of the union between Edmund and Eliza. George Stewart, the defendant, was not a child of Edmund Wiley.

There was no community of acquêts and gains existing between Edmund Wiley and Eliza Bowman, and the property acquired by Edmund after the death of Rose, his wife, was the property of Edmund, and his forced heir George Wiley, the plaintiff, takes it by inheritance from his father.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of George Wiley and against defendant, ordering him to turn over to plaintiff, as legal heir of Edmund Wiley and as administrator of the succession of Edmund Wiley, all the property belonging to the late Edmund Wiley, particularly that which has been inventoried in the succession of Eilza Bowman; costs of court to be paid by defendant.

MONROE, C. J., not having heard the argument, takes no part.

On Rehearing.

PROVOSTY, J. At the death of Edmund Wiley, Eliza Bowman, who for many years had been living with him as his wife, caused his will to be probated, and herself to be put in possession as universal legatee. The present plaintiff, George Wiley, claiming to be the son and sole heir of the deceased, brought suit praying to be so recognized, and that the said will of his father be annulled, and judgment was so rendered by the trial court. The suit was against Eliza Bowman. She appealed from the judgment, and pending the appeal died; and the defendant in the present suit, George Stewart, her son and universal legatee and testamentary executor, who had caused her will to be probated, and himself to be put in possession of her succession as executor, made himself a party to the appeal. The judgment was affirmed (144 La. 181, 80 South. 243), and thereupon George Wiley caused himself to be appointed administrator of the succession of Edmund Wiley his father, and in his said capacity brought the present suit against George Stewart, executor of Eliza Bowman, to recover the prop-

erty of the succession of Edmund Wiley. He alleges that the will of Eliza Bowman, as well as the appointment of defendant as its executor, is null, and that defendant is not the legal heir of Eliza Bowman, and that the latter was not the wife, but the concubine of Edmund Wiley, and, as such, was not entitled to any part of his estate.

The will of Edmund Wiley having been annulled, there is no longer any dispute as to plaintiff's being entitled to recover one-half of the property in suit, and to recover the whole if Eliza Bowman was not the wife of Edmund Wiley. If she was his wife, she was owner of one-half, as partner in community; for the property was acquired while she and Edmund Wiley were living together as man and wife.

The question of marriage is really the only one in the case, for, if there was no marriage, Eliza Bowman was not entitled to take, and her executor is not entitled to hold, any part of the property, no matter how formal was her will, or how much in due form was the appointment of the executor under it; and defendant, as her son and heir has no greater right. Defendant must in that event simply surrender up the property to the plaintiff as the legal representative of the succession of Edmund Wiley. Plaintiff has therefore no interest in attacking the will of Eliza Bowman, nor the appointment of her executor, nor the heirship of defendant.

Defendant contends: That the plaintiff is estopped from contesting said marriage because, in the suit wherein he was held to be the legitimate son of Edmund Wiley and the latter's will was annulled, he prayed as follows:

"Wherefore petitioner prays that Eliza Bowman, surviving widow and executrix of the succession of Edmund Wiley, be duly cited, * * * and that there be judgment recognizing him as heir and annulling the will of Edmund Wiley."

That, having thus sued her as widow of Edmund Wiley, he is estopped from now contesting her marriage.

The contention is without force, since plaintiff was not seeking in that suit to derive any advantage or benefit from the supposed fact of the marriage in question having existed, and was simply acting upon a supposition which will turn out to have been erroneous if he succeeds in the present suit. A judicial allegation thus made in good faith in another suit, without intention to deceive any one thereby, or to derive any advantage therefrom, and by which no one has been prejudiced, and from which no advantage has been derived, does not estop. Farley v. Frost-Johnson, 133 La. 497, 63 South. 122, L. R. A. 1915A, 200, Ann. Cas. 1915C, 717.

In her answer in the former suit, Eliza Bowman, after having categorically denied the allegations of the petition as to the legitimacy of plaintiff, and as to the invalidity of Edmund Wiley's will, averred as follows:

"Your respondent further avers that the will attacked herein, even if invalid, which is denied, the same neither adds to nor detracts from the right of your respondent, because all the property left by the deceased is community property, and that she is entitled to the usufruct during her life, and if no forced heir exists she inherits the whole succession."

The prayer of this answer was in these words:

"Wherefore respondent prays that plaintiff's demand be rejected, and his suit dismissed, with costs."

This was the whole prayer. There was no prayer that Eliza Bowman be recognized as usufructuary. There was no prayer in that connection, and no prayer for general relief, but simply and solely a prayer for the dismissal of plaintiff's suit.

The judgment of the court was as follows:

"It is therefore ordered, adjudged, and decreed that there be judgment in favor of the plaintiff, George Wiley, recognizing him as the sole and only legitimate heir of the said deceased, Edmund Wiley, his father, and conferring upon him all the rights and privileges of a legitimate child.

"It is further ordered, adjudged, and decreed that the will executed by the said deceased, Edmund Wiley, be declared null and void and of no effect, and that the same be and it is hereby set aside and annulled in toto.

"It is further ordered, adjudged, and decreed that the surviving widow Eliza Bowman, be given the usufruct of the property during her natural life or until she marries again."

This judgment was affirmed on the appeal, but not that part relating to the usufruct; the court remarking that:

"Eliza Bowman having died after the appeal was taken, it becomes unnecessary to review that portion of the judgment." Wiley v. Bowman, 144 La. 181, 80 South. 243.

Defendant pleaded that part of this judgment decreeing a usufruct as res judicata on the question of the validity of the marriage.

In the first place, that part of the judgment never became final. In the second place, for the judgment in one suit to be res judicata of another suit, "the thing demanded must be the same; the demand must be founded on the same cause of action." C. C. art. 2286. The object of the former suit was to obtain the recognition of the legitimacy of the present plaintiff, and the annulment of the will of Edmund Wiley. The object of the present suit is to recover the property of the estate of Edmund Wiley. The only issues in the other suit were as to the legitimacy of plaintiff, and as to the validity of the will of Edmund Wiley; the only issue in the present case is as to the validity of the marriage of Eliza Bowman with Edmund Wiley. True, in the decree in the former suit there is a clause giving to Eliza Bowman the usufruct of the property as surviving

145 LA.—35

widow of Edmund Wiley; but the court was entirely without authority to make such a decree, as no issue of that kind was involved in the case. If Eliza Bowman had sought by her answer to bring that issue into the case by way of reconventional demand, she could have been met with the objection that the demand was not germane to the suit. But she did not make that attempt; her prayer was simply for the rejection of plaintiff's demand. All she did was to casually mention in her answer that she would be entitled to the usufruct of the estate of Edmund Wiley, if his will was annulled.

[3, 4] Eliza Bowman's marriage to Edmund Wiley was only putative at best, for the latter had a wife still living, and the most that can be claimed for Eliza Bowman is that she acted in good faith, not knowing that Edmund Wiley had a wife still living, and that consequently the marriage must be allowed to have its civil effects under article 118 of the Code, as far as she is concerned.

The evidence does not show that at that time Edmund Wiley was living with his wife, nor where either of them was then living. Eliza Bowman testifies that she did not know of the marriage, and is not contradicted. There may possibly be contradiction to be found in, or derived from, the evidence in the former suit, but of the testimony taken in that suit the only part that was offered in this suit was that of Eliza Bowman herself.

Her said testimony, however, appears to us to be fatal to the claim now made by her son that she acted in good faith in marrying Edmund Wiley; for it shows that she had contracted during the war a slave marriage with Sandy Stewart, and that she had six children by him during this marriage. She must then have continued to live with him as his wife after she and he had become free persons. This made her slave marriage become a legal marriage. Meyers

v. Meyers, 139 La. 752, 72 South. 218. And he lived up to three years before the trial of the present suit.

The judgment appealed from is therefore set aside, and it is now ordered, adjudged, and decreed that the succession of Edmund Wiley be and is hereby recognized to be sole owner of the property in suit, fully described in the inventory of that succession; that Eliza Bowman was, and her heir, the defendant, testamentary or legal, is, entitled to have no part of said property; that he be and is hereby condemned to deliver same to the plaintiff in the latter's said capacity of administrator of said succession; and that defendant pay the costs of this suit.